company, but they had no other interest in its affairs that was not common to all of the shareholders. In signing the instrument, the defendants affixed the title of their office to their signatures. There was no occasion for their so doing if they were to become personally liable. The resolution consenting to take the money is quite significant. Reading the resolution and the agreement together, it is quite apparent that the parties intended to provide that the plaintiff should be at liberty to withdraw his money at any time prior to the 1st of March following, without the formality of giving a written notice; but, if he permitted it to remain with the association thereafter, it was to be subject to the rules and regulations of the association as to the manner of its withdrawal. The only reasonable inference to be drawn from the evidence is that the plaintiff, in loaning his money and in receiving the contract, understood that he was dealing with the association, and that the defendants, in executing the contract, did so in their official capacity, without intending to be liable personally. The power to borrow money was given to the association by the statute under which it was organized. It could also obtain money by issuing shares of stock to its members, and receiving dues thereon. The following authorities sustain the construction given to this instrument by the trial court. Mott v. Hicks, 1 Cow. 513; Babcock v. Beman, 11 N. Y. 200; Bank of Genesee v. Patchin Bank, 13 N. Y. 309, 19 N. Y. 312; Bank v. Clark, 139 N. Y. 307, 34 N. E. 908. The fact that the plaintiff was fully aware of the character in which the defendants assumed to act distinguishes, we think, this case from the authorities to which we are referred by the plaintiff's counsel.

The judgment appealed from should be affirmed. All concur.

---

(84 Hun, 341.)

### SHRUMP v. PARFITT.

(Supreme Court, General Term, Second Department. February 11, 1895.)

ARBITRATION AND AWARD—FINDINGS NOT WITHIN SUBMISSION.
　　A finding not within the submission will not vitiate the award, where it is severable, and may be rejected without affecting the rest.

Appeal from special term.

Action by Frederick W. Shrump against Walter E. Parfitt. From a judgment entered on the award of arbitrators in favor of plaintiff, and from an order confirming the award and denying a motion to vacate it, defendant appeals. Affirmed.

The opinion of Mr. Justice GAYNOR at special term is as follows:

The defendant objects to the award upon the ground that the arbitrators exceeded their powers. If they did not exceed their powers,—in other words, if they kept within their jurisdiction,—their award is unassailable, unless for corruption, fraud, or like misconduct, and will not be set aside for errors of law or of fact on their part. Fudickar v. Insurance Co., 62 N. Y. 392; Masury v. Whiton, 111 N. Y. 679, 18 N. E. 638; Herbst v. Hagenaers, 137 N. Y. 290, 33 N. E. 315; Code Civ. Proc. § 2374. After rejecting the stones, the defendant mutilated them by knocking off the corner or a piece

of the molding of each with a hammer. In his capacity of architect he had the power, and it was his duty, to reject stones unfit and not in accordance with the contract. It was submitted to the arbitrators by the arbitration agreement to determine (1) the number of stones rejected and injured with the hammer as above stated; (2) the value of .each stone after rejection and before the injury; (3) the damage done by reason of the said acts. The arbitrators have precisely determined these three things by their findings numbered 12, 13, 16, which correspond in so many words to the propositions submitted. If they had made no other finding, ingenuity could suggest no objection to their award, within the narrow limits allowable. They have specifically found in addition, and unnecessarily, that the defendant had no right to arbitrarily reject stones; that he did not reject any by marking them with a pencil; that he did not notify the plaintiff of the rejection of the stones before breaking or mutilating them; that he arbitrarily mutilated them; and substantially, that those he so mutilated were fit, and therefore (by implication) arbitrarily rejected. I do not see, and cannot say, that these findings necessarily affected the result. They were irrelevant, and, so long as the award was within the jurisdiction of the arbitrators, are not to be regarded. The contention for the defendant is that the mere rejection of the stones, whether they were fit or unfit, made them useless, except to be broken up for rubble, for which use their value would be only $34.50, as is found; and that, as the chipping off of the corners or moldings could not affect their value for this use, the defendant did them no damage. The reason, it is said, why rejection would make them nearly valueless, is that, as they were fashioned for this particular church tower, they could be used for nothing else except rubble, as it is altogether improbable that any tower exactly like it will ever be built. The arbitrators, as we have seen, were made the judges of what the stones were worth after rejection and before being mutilated; and as it is plain that in determining such value, as they did in so many words, it mattered not whether they were rejected arbitrarily or in good faith, the finding that they were rejected arbitrarily, and the similar findings, are of no consequence. The rejection is what affected their value by destroying their use, and not the good or bad faith with which they were rejected. Hence it cannot be assumed that the arbitrators found that they were worth more after being rejected arbitrarily than if they had been rejected in good faith. Some of the stones broken by the defendant were already laid, and by finding 15 it is determined that the plaintiff was damaged $100, the cost of relaying other stones in their place. I do not see how this comes within the submission; but, as it is severable, it may be rejected, letting the rest stand. 137 N. Y. 296, 33 N. E. 315, supra. The basis which the arbitrators had to take by the submission—for so it is therein set down—was that the stones were rejected before they were mutilated, and the only measure of damage allowed to them was the injury to the stone after rejection. The basis for the finding of $100 damage was that the stones were fit, and should not have been rejected, and their rejection damaged the plaintiff to the extent of the cost of relaying other stones in their place. In the same way it may be urged that the finding that all of the stones were fit affected the award of the arbitrators. But, as has been seen, it cannot be certainly said, if at all, that it affected their determination of the value of the stones after rejection and before being mutilated. That determination of value included the laid stones which were mutilated, and all, and was well made, and it was as far as they could go. But, leaving aside what has been said above, it would be sufficient to say that, if the language of the award enabled the court to say that the arbitrators considered the arbitrary rejection of the stones as increasing their value after rejection over what it would be if they had been properly rejected (a thing too absurd to be attributed to them, the stones being intrinsically of the same value in either case), it was, after all, only an error of law on their part, and, as has been seen, the court may not regard it. The award is also objected to on the ground that it is not definite and final, but no reason or particular therefor is assigned. The award is confirmed to the extent of $1,317.93.

Argued before BROWN, P. J., and DYKMAN and PRATT, JJ.

Herman F. Koepke, for appellant.

Horatio C. King, for respondent.

PER CURIAM.    Order affirmed, with costs, on opinion of GAYNOR, J.

------

(84 Hun, 570.)

SAFETY ELECTRIC CONST. CO. v. CREAMER.

(Supreme Court, General Term, First Department.  February 15, 1895.)

ACCOUNTING—WHEN GRANTED—PLEADING.

A complaint alleged the execution of a contract by which defendant gave plaintiff a license to use a patent owned by defendant, and plaintiff agreed to pay therefor certain weekly royalties; and a percentage of profits on the articles manufactured; that the royalties were paid up to a certain date, and no profits were made, but defendant claimed that profits had accrued; that an inspection of plaintiff's books had been offered; that an examination of a long and complicated account would be necessary to ascertain whether there had been any profits; and that defendant threatened to enforce a forfeiture of the contract for nonpayment of profits. An accounting was asked, and, should anything be found to be due from plaintiff to defendant, that a reasonable time be allowed within which to pay it, and that on such payment defendant be barred of all right to forfeit contract. *Held*, that an accounting would not be granted, as the facts alleged in the complaint showed that there was nothing to be accounted for.

Appeal from special term, New York county.

Two actions by the Safety Electric Construction Company against Henry Creamer.   Action No. 1 was for an accounting under a contract between the parties, and action No. 2 was to enjoin defendant from annulling or rescinding the contract.   The complaint was dismissed in action No. 1, and from the judgment entered on such dismissal plaintiff appeals.   Affirmed.

The opinion of Mr. Justice PATTERSON, dismissing the complaint, is as follows:

This action was brought in the first instance for an accounting under a contract entered into between the parties, by which, among other things, the plaintiff was to pay the defendant, in addition to fixed guarantied royalties payable weekly, a certain percentage of profits on articles to be manufactured by it under a license granted by the defendant, a patentee of an important invention used in connection with steam machinery.   The contract provided that, in default of payment within a certain time after notice, the license should be forfeited.   The original complaint alleges distinctly that all guarantied royalties were paid up to a certain date, and that no profits were made, but that the defendant claimed profits had accrued; that an inspection of plaintiff's books had been offered; that an examination of a long and complicated account would be necessary to ascertain whether any profits had arisen; that the defendant threatened to enforce the forfeiture, and the prayer for relief was for accounting, etc.   An injunction was not asked for.   A supplemental complaint (so-called) was served, and therein it was asked that it be judicially ascertained whether anything is due from the plaintiff to defendant, and, if it be found there is, that the plaintiff be allowed a reasonable time within which to pay it, and that upon such payment being made the defendant "be barred from all right to forfeit said contract, and from claiming or attempting to claim a forfeiture thereof for any matter or thing done previous to the beginning of this action," etc.   To say the least, this is a very peculiar suit.   Its basis is an asserted right to an accounting under a state of facts as presented by the plaintiff